FILED BY ___ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 JUN 15  PM 12: 21

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

|  |  |  |
|---|---|---|
| ERIC J. FAIR, | X X X | |
| Petitioner, | X X | |
| vs. | X X | No. 05-2074-Ma/P |
| RICKY BELL, | X X | |
| Respondent. | X X X | |

ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER OF DISMISSAL
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

Petitioner Eric J. Fair, Tennessee Department of Correction prisoner number 229661, an inmate at the Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee, filed a pro se petition pursuant to 28 U.S.C. § 2254 on January 28, 2005, along with an application seeking leave to proceed in forma pauperis. Because Fair paid the habeas filing fee on February 1, 2005, the motion to proceed in forma pauperis is DENIED as moot. The Clerk shall record the respondent as RMSI warden Ricky Bell.

I.   STATE COURT PROCEDURAL HISTORY

On or about December 3, 1993, Fair was convicted following a jury trial in the Shelby County Criminal Court of first

This document entered on the docket sheet In compliance with Rule 58 and/or 79(a) FRCP on 6-15-05

④

degree murder in the shooting death of Gloria Rice on April 16, 1992.[1] Fair was sentenced to life imprisonment. The Tennessee Court of Criminal Appeals affirmed. <u>State v. Fair</u>, No. 02C01-9403-CR-00055, 1995 WL 686105 (Tenn. Crim. App. Nov. 15, 1995), <u>perm. app. denied</u> (Tenn. May 6, 1996).

According to the documents submitted with the petition, Fair filed a <u>pro se</u> petition pursuant to the then-current version of the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-201 to -222, in the Shelby County Criminal Court on October 11, 1999, alleging that he had received ineffective assistance of counsel because his attorney had failed to file an application for permission to appeal the decision of the Tennessee Court of Criminal Appeals on direct appeal to the Tennessee Supreme Court. The postconviction court summarily dismissed the petition on December 13, 1999, pursuant to Tenn. Code Ann. § 40-30-206(f), because appellate counsel had, in fact, filed an application for permission to appeal that was denied by the Tennessee Supreme Court. It does not appear that Fair appealed the dismissal of his postconviction petition.

The petition before the Court alleges that Fair filed a petition for a writ of habeas corpus, pursuant to Tenn. Code Ann. § 29-21-101 <u>et seq.</u>, in the Davidson County Criminal Court on October 17, 2002. The trial court issued an order dismissing that

---

[1] According to the petition, Fair was convicted of intentional first degree murder but was acquitted of felony murder.

2

petition on November 11, 2002. The Tennessee Court of Criminal Appeals affirmed in an unpublished opinion issued on October 2, 2003 that was not supplied by the petitioner. The Tennessee Court of Criminal Appeals denied permission to appeal on February 2, 2004 because the application was not timely filed.

II.     PETITIONER'S FEDERAL HABEAS CLAIMS

In this federal habeas petition, Fair raises the following issues:

1. Whether there was a fatal variance between the indictment and the evidence presented at trial because of the trial court's erroneous jury instruction permitting the jury to apply the common-law doctrine of transferred intent when it was undisputed that Fair intended to rob Terrance Cox, not murder him; and

2. Whether the trial court erred when it refused to instruct the jury on any lesser-included offenses; and

3. Whether the evidence was sufficient to convict Fair of intentional first degree murder.

III. ANALYSIS OF THE MERITS

The first issue to be considered is the timeliness of this petition. Twenty-eight U.S.C. § 2244(d) provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall begin to run from the latest of—

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

3

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Application of these provisions in this case is straightforward. State convictions ordinarily become "final" within the meaning of § 2244(d)(1)(A) at the expiration of the time for filing a petition for a writ of certiorari from a decision of the highest state court on direct appeal. Bronaugh v. Ohio, 235 F.3d 280, 283 (6th Cir. 2000). The Tennessee Supreme Court denied review on May 6, 1996 and, therefore, the statute of limitations began to run at the conclusion of the time for filing a petition for a writ of certiorari on August 5, 1996. Because Fair did not file any collateral challenge to his conviction during the next year, the

one-year limitations period expired on August 5, 1997.[2] This petition was purportedly signed on January 26, 2005 and, even if it were deemed to have been filed on that date, see Houston v. Lack, 487 U.S. 266 (1988); Miller v. Collins, 305 F.3d 491, 497-98 & n. 8 (6th Cir. 2002); Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999) (§ 2255 motion), it is clearly time barred.[3]

The one-year limitations period applicable to § 2254 motions is subject to equitable tolling. Griffin v. Rogers, 308 F.3d 647, 652-53 (6th Cir. 2002); see also Dunlap v. United States, 250 F.3d 1001, 1004 (6th Cir. 2001) (equitable tolling also applies to § 2255 motions). Five factors are relevant to determining the appropriateness of equitably tolling a statute of limitations:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive notice of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

---

[2]  It is not necessary for this Court to consider whether Fair's subsequent state postconviction petition, or his state habeas petition, were "properly filed application[s] for State post-conviction or other collateral review" within the meaning of 28 U.S.C. § 2244(d)(2) and Artuz v. Henderson, 431 U.S. 4 (2000), sufficient to toll the running of the limitations period, because they were not filed until after the limitations period had already expired. Owens v. Stine, No. 01-1200, 27 Fed. Appx. 351, 353 (6th Cir. Oct. 2, 2001) ("A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

[3]  Section 2244(d)(1) provides that the limitations period begins to run from the latest of the four specified circumstances. In this case, however, an examination of Fair's claims reveals no basis for concluding that the limitations period commenced at any time later than the date on which his conviction became final. In particular, although Fair apparently raised his first issue in the state habeas petition, which was filed in 2002, there seems to have been no impediment to his raising that issue on direct appeal.

5

Dunlap, 250 F.3d at 1008.[4]

The Sixth Circuit has repeatedly stated its view that "equitable tolling relief should be granted only sparingly." Amini, 259 F.3d at 500; see also Vroman v. Brigano, 346 F.3d 598, 604 (6th Cir. 2003); Jurado v. Burt, 337 F.3d 638, 642 (6th Cir. 2003).

> Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. . . . Absent compelling equitable considerations, a court should not extend limitations by even a single day.

Graham-Humphreys v. Memphis Brooks Museum, Inc., 209 F.3d 552, 560-61 (6th Cir. 2000); see also King v. United States, 63 Fed. Appx. 793, 795 (6th Cir. Mar. 27, 2003); Johnson v. U.S. Postal Serv., No. 86-2189, 1988 WL 122962 (6th Cir. Nov. 16, 1988) (refusing to apply equitable tolling when pro se litigant missed filing deadline by one day). Thus, ignorance of the law by pro se litigants does not toll the limitations period. Price v. Jamrog, 79 Fed. Appx. 110, 112 (6th Cir. Oct. 23, 2003); Harrison v. I.M.S., 56 Fed. Appx. 682, 685-86 (6th Cir. Jan. 22, 2003); Miller v. Cason, 49 Fed. Appx. 495, 497 (6th Cir. Sept. 27, 2002) ("Miller's lack of knowledge of the law does not excuse his failure to timely file a habeas corpus petition."); Brown v. United States, 20 Fed. Appx. 373, 374 (6th Cir. Sept. 21, 2001) ("Ignorance of the limitations

---

[4] This five-factor standard is identical to the test used to determine whether equitable tolling is appropriate in other contexts, including employment discrimination cases. Amini v. Oberlin College, 259 F.3d 493, 500 (6th Cir. 2001) (citing Dunlap); Truitt v. County of Wayne, 148 F.3d 644, 648 (6th Cir. 1998).

6

period does not toll the limitations period."); cf. Jurado, 337 F.3d at 644-45 (lawyer's mistake is not a proper basis for equitable tolling).[5]

Fair cannot satisfy his burden of demonstrating that equitable tolling would be appropriate in this case. It appears that Fair mistakenly assumed that the one-year period for filing a petition pursuant to 28 U.S.C. § 2254 commences to run, in the first instance, only after the disposition of all state-court collateral challenges to his conviction. For the reasons previously stated, Fair's ignorance of the law provides no basis for tolling of the limitations period.

Because it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court," summary dismissal prior to service on the respondent is proper. Rule 4, Rules Governing Section 2254 Cases in the United States District Courts. The petition is DISMISSED.

IV. APPEAL ISSUES

The Court must also determine whether to issue a certificate of appealability ("COA"). The statute provides:

---

[5] See also Cobas v. Burgess, 306 F.3d 441 (6th Cir. 2002) ("Since a petitioner does not have a right to assistance of counsel on a habeas appeal . . . , and because an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations . . . , we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner.").

7

 (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

  (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

  (B) the final order in a proceeding under section 2255.

 (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

 (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2254 petitioner may appeal without this certificate.

  In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'" Slack, 529 U.S. at 484 (quoting Barefoot, 463 U.S. at 893 & n.4).

  The Supreme Court recently cautioned against undue limitations on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application of a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in <u>Slack</u> would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with § 2253 that a COA will issue in some instances where there is no certainty of ultimate relief. After all, when a COA is sought, the whole premise is that the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>, 463 U.S. at 893). Thus,

> A prisoner seeking a COA must prove "'something more than the absence of frivolity'" or the existence of mere "good faith" on his or her part. . . . We do not require petitioners to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also id.</u> at 342 (cautioning courts against conflating their analysis of the merits with the decision of whether to issue a COA; "The question is the debatability of the underlying constitutional claim, not the resolution of that debate.").[6]

In this case, there can be no question that any appeal by this petitioner on any of the issues raised in this petition does

---

[6] By the same token, the Supreme Court also emphasized that "[o]ur holding should not be misconstrued as directing that a COA always must issue." <u>Id.</u> at 337. Instead, the COA requirement implements a system of "differential treatment of those appeals deserving of attention from those that plainly do not." <u>Id.</u>

9

not deserve attention as the petition is time barred. The Court, therefore, DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions. <u>Kincade v. Sparkman</u>, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal <u>in forma pauperis</u> in a habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). <u>Kincade</u>, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal <u>in forma pauperis</u>, the prisoner must file his motion to proceed <u>in forma pauperis</u> in the appellate court. <u>See</u> Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal <u>in forma pauperis</u> is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion

to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 14th day of June, 2005.

*/s/ Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 4 in case 2:05-CV-02074 was distributed by fax, mail, or direct printing on June 15, 2005 to the parties listed.

---

Eric Fair
RIVERBEND MAXIMUM SECURITY INSTITUTION
229661
7475 Cockrill Bend Road
Nashville, TN 37209

Honorable Samuel Mays
US DISTRICT COURT